# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02051-RBJ-MEH

FIRST DESCENTS, INC., a Colorado non-profit corporation,

      Plaintiff,

v.

EDDIE BAUER LICENSING SERVICES LLC, a Delaware limited liability company, and
EDDIE BAUER LLC, a Delaware limited liability company,

      Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL

The Scheduling Conference in the above-captioned matter is set for October 24, 2011 at

9:45 a.m. in Courtroom A-501 of the Alfred A. Arraj United States Courthouse, 901 19th Street,

Denver, Colorado 80294. The names, addresses, telephone numbers, and email addresses of

counsel for Plaintiff ("First Descents") and for Defendants ("Eddie Bauer", collectively) are as

follows:

Gayle L. Strong
Amy L. Kramer
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Tel:  303-572-6500
strongg@gtlaw.com
kramera@gtlaw.com

ATTORNEYS FOR PLAINTIFF
      Sean M. Berkowitz
Kevin A. Russell
Matthew W. Walch
Sue K. Paik
LATHAM & WATKINS LLP
233 S. Wacker Drive, Suite 5800
Chicago, IL  60606
Tel:  312-876-7700

Fax:  312-993-9767
sean.berkowitz@lw.com
kevin.russell@lw.com
matthew.walch@lw.com
sue.paik@lw.com

Cliff Stricklin
Andrew B. Mohraz
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
Tel: 303-861-7000
Fax:  303-866-0200
cliff.stricklin@hro.com
andrew.mohraz@hro.com

ATTORNEYS FOR DEFENDANTS

## 2. STATEMENT OF JURISDICTION

Plaintiff First Descents' claims are brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the common law of the state of Colorado. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332, 1338, and 1367, and 15 U.S.C. § 1121.

Plaintiff asserts that the Court has personal jurisdiction over Defendants because they transact business and/or offer to transact business within this judicial district, offer for sale and sell in this District merchandise branded with the infringing marks that are the subject of this action, Defendants' commission of tortious acts reaches this judicial District, and they have constitutionally sufficient contacts with Colorado to make personal jurisdiction proper in this District.

Defendants do not deny subject matter jurisdiction.  Defendants deny that they have offered for sale or sell in this District merchandise branded with infringing marks or that they have committed any tortious acts, but they do not deny personal jurisdiction.

### 3. STATEMENT OF CLAIMS AND DEFENSES

**a.      PLAINTIFF' STATEMENT:**

This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and trademark infringement and unfair competition under Colorado common law.

The FIRST DESCENTS® Adventure Therapy Camps Were Founded in 2001

Plaintiff's FIRST DESCENTS® camp experience was founded in 2001 as an adventure therapy whitewater kayaking camp for adolescents and young adults fighting and surviving cancer. The name "First Descents" was chosen for the camps because in kayaking and skiing, a "first descent" is the first time anyone has successfully navigated a particular river or skied a particular slope. Brad Ludden, the founder of First Descents and world class professional kayaker, used the mark with the camp experience for young adults fighting or surviving cancer that provides the opportunity for the campers to experience that outdoor activity for their first time - and therefore, their own personal "first descents." The camps have grown to include rock climbing and other outdoor adventures such as mountaineering and surfing. During the FIRST DESCENTS® camp experience, young adult cancer survivors undertake outdoor challenges in which they push their limits and face their fears - gaining confidence, a sense of control, and the self-reliance they lost to cancer.

3

First Descents owns U.S. Service Mark Registration No. 2,695,260 for the mark FIRST DESCENTS® that issued March 11, 2003 for its motivational kayak sports camp for people with cancer. Since 2001, First Descents also has been using its FIRST DESCENTS® mark on various items of apparel that have been provided to participants, counselors and volunteers in the camp programs and sold to the public to raise funds for camp participants.  In September 2008, First Descents filed for registration of its FIRST DESCENTS® mark with apparel based on its actual use since 2001 with those items. During that time period when First Descents was seeking registration of its mark FIRST DESCENTS® for its apparel, its executive director Allan Goldberg succumbed to cancer. The loss of Mr. Goldberg impacted First Descents' business affairs and the entire organization, until it could get back on its feet sometime later.

First Descents' trademark application for FIRST DESCENTS for apparel that was filed in 2008 was suspended by the USPTO based on trademark applications that had been filed by Eddie Bauer only months earlier and without the knowledge of First Descents for the marks FIRST ASCENT and FIRST DESCENT.  Eddie Bauer's applications for FIRST ASCENT and FIRST DESCENT, unlike that of First Descents, were not based on actual use of the marks but were "intent to use" applications - meaning that Eddie Bauer had not used those marks with the goods described in those applications at the time of filing in 2008.  Instead, Eddie Bauer took assignment of earlier FIRST ASCENT trademark registrations from companies that had used the mark with camping related items like sleeping bags, back packs and tote bags, and Eddie Bauer now claims that its rights in the FIRST ASCENT mark for use with apparel date back to 1988, based only on the use of the mark by others in the outdoors camping equipment industry.

In the ten years since the first camp program, thousands of items bearing the FIRST DESCENTS mark have been distributed to campers, counselors, volunteers and supporters. In addition, various items of branded FIRST DESCENTS apparel have been sold nationwide as a means of raising operational revenue for the camps, and have been featured for sale on First Descents' website at <www.firstdescents.org> and at various outdoor industry events.  As a result of a decade of the activities of the committed individuals associated with FIRST DESCENTS® camps, the FIRST DESCENTS® Mark has become recognized and associated with outdoor adventure experiences made available to young adult cancer fighters and survivors. FIRST DESCENTS® branded apparel is worn by athletes raising awareness of the First Descents organization at numerous outdoor events and competitions, and in the fund raising efforts of those athletes.

Eddie Bauer's Use of FIRST ASCENT and FIRST DESCENT Eight Years After First Descents' Use

Eddie Bauer asserts that since the days of outfitting mountaineering expeditions in the 1950s and 1960s, its "Eddie Bauer" down clothing has become the preferred gear for climbing expeditions. Inexplicably, at no time in the fifty plus years since those expeditions has Eddie Bauer sought to create a brand under the term "First Ascent" or "First Descent" -  until eight years *after* First Descents began using its mark FIRST DESCENTS®.  Defendants have and continue to infringe the FIRST DESCENTS® mark by adoption and use of the marks FIRST ASCENT and FIRST DESCENT with outdoor apparel, and at the same outdoor industry activities and competitions. Eddie Bauer launched its promotion and sales of outdoor clothing and other items under the FIRST ASCENT mark sometime in 2009, well after the time that First

5

Descents began operating its adventure therapy cancer camps and providing FIRST DESCENTS branded clothing items to camp participants, camp counselors, volunteers and supporters.  Eddie Bauer's promotional activities using FIRST ASCENT have occurred at many of the same industry events and venues where First Descents has participated – creating numerous incidents of consumer confusion between First Descents and Eddie Bauer in that consumers have expressed a belief that Eddie Bauer sponsors the FIRST DESCENTS® cancer therapy camps.

Despite Eddie Bauer's knowledge of First Descents, its cancer camps and the activities of FIRST DESCENTS athletes, sometime in 2010 Eddie Bauer launched ski gear under the FIRST DESCENT mark. Eddie Bauer had filed with the U.S. Patent and Trademark Office in 2008 various intent to use applications for the marks FIRST ASCENT and FIRST DESCENT, well after First Descents' adoption and first use of the mark FIRST DESCENTS® with its cancer camp and its branded apparel in 2001.

First Descents was concerned about the similarity between the mark FIRST ASCENT and its mark FIRST DESCENTS®, but believed at that time that the best path to resolving confusion was to propose a partnership that could help distinguish the two organizations as separate entities.  After these discussions began, First Descents learned that Eddie Bauer had launched a FIRST DESCENT line of clothing as a separate brand. First Descents halted any dialogue involving a potential partnership until Eddie Bauer clarified its intent concerning its unannounced adoption of the FIRST DESCENT brand, as Eddie Bauer's use of FIRST DESCENT was never part of the original proposal, never part of any discussions involving consent to use First Descents' mark FIRST DESCENTS® or identified in any potential licensing agreements. The prior partnership discussions only related to the mark FIRST ASCENT that

6

Eddie Bauer had decided to use in 2009. First Descents had been blindsided by Eddie Bauer's launch of FIRST DESCENT apparel.

<u>Consumers Erroneously Believe that Eddie Bauer Sponsors the FIRST DESCENTS® Camps</u>

Actual confusion among consumers who believe that Eddie Bauer is a sponsor of or affiliated with First Descents has been on going. Eddie Bauer has continued to free-ride on the goodwill that First Descents has built in its charitable activities and outdoor adventure community through its FIRST DESCENTS® camps. Defendants' infringing conduct continues to damage First Descents by creating the erroneous impression that the activities of First Descents are funded by Eddie Bauer and the FIRST DESCENTS® fund raising athletes are sponsored by Eddie Bauer, and are not independent athletes that seek to raise funds for the camps from members of the public whose financial support is critical to its continued success. First Descents seeks injunctive relief to enjoin Eddie Bauer's use of the FIRST ASCENT and FIRST DESCENT marks, and seeks monetary relief to compensate First Descents for the damage to its goodwill, charitable fund raising ability and injury to its mark. First Descents further seeks to cancel Eddie Bauer's wrongfully obtained U.S. Reg. Nos. 3,934,798  3,970,936 and 3,974,941 for the FIRST ASCENT and FIRST DESCENT marks.

     **b.**    **DEFENDANTS' STATEMENT:**

Defendants deny that: (1) they have committed any statutory violations or torts; (2) plaintiff is entitled to any relief on its claims; and (3) plaintiff has asserted any claim regarding defendants' conduct in "competing outdoor activities," as plaintiff states above. Defendants affirmatively assert that plaintiff's claims are barred by laches, acquiescence and estoppel. Defendants summarize below the bases for their denials and defenses:

7

Eddie Bauer LLC, known as the "Original Expedition Outfitter," manufactures and sells high-quality outerwear, men's and women's clothing, and outdoor gear and accessories. The company's predecessor-in-interest was first established in the back of a Seattle hunting and fishing store in 1920 by Pacific Northwest outdoorsman Eddie Bauer. In 1936, Mr. Bauer invented the first quilted, goose down insulated jacket, revolutionizing outerwear and marking the company's entrance into innovative outdoor apparel and goods. During World War II, the U.S. Army Air Forces commissioned Mr. Bauer to develop and supply flight suits and parkas for its pilots. Mr. Bauer also supplied the U.S. Army with back packs, pants and sleeping bags, all of which became standard issue for American troops during the war.

After the war, Mr. Bauer and his company turned their expertise in the manufacture of down clothing to outfitting mountaineering expeditions. The company outfitted more than 40 major expeditions between 1953 and 1983, the golden age of American mountaineering, starting with the historic 1953 American K2 Expedition. Approximately half of the 40 EDDIE BAUER-outfitted expeditions were "First Ascents" – a term commonly used by mountain climbers to refer to the first successful, documented summit of a particular peak. In the years to follow, the company and its successor-in-interest, Eddie Bauer LLC, continued to produce the preferred gear for climbing expeditions, including expeditions designed to retrace First Ascents in which EDDIE BAUER gear had been used. In sum, the EDDIE BAUER brand has a longer history in First Ascents than any other American brand.

In April 2008, Eddie Bauer, Inc. ("EBI") filed four intent-to-use trademark applications for the FIRST ASCENT mark to be used in a new line of EDDIE BAUER mountaineering-quality outerwear and gear as well as for retail store, online and catalog services. EBI intended

8

to use the FIRST ASCENT mark to recognize its long tradition of outfitting mountain climbers in their First Ascent expeditions.   Shortly after filing the FIRST ASCENT intent-to-use trademark applications, EBI acquired the trademark rights and federal registration of a third party, American Recreation Products, Inc. ("AR Products"), which had been using the FIRST ASCENT mark on tote bags, back packs and sleeping bags since 1988.  The United States Patent and Trademark Office (the "USPTO") granted EBI's four FIRST ASCENT trademark applications without any third-party opposition on November 10, 2009 (tents), December 29, 2009 (knives and retail store, online and catalog services), March 22, 2011 (clothing) and June 21, 2011 (water bottles), respectively.   The USPTO granted two other EBI applications, both filed for a stylized design of FIRST ASCENT (with an "A" on top of the word FIRST ASCENT), on February 1, 2011 and June 7, 2011, respectively, in connection with all of the aforementioned goods and services.   As part of a 2009 bankruptcy auction of assets, EBI assigned its rights in the FIRST ASCENT mark to defendant Eddie Bauer Licensing Services LLC ("EB Licensing"), which then licensed the mark to its affiliate and co-defendant, Eddie Bauer LLC.

EBI launched the FIRST ASCENT line by introducing product to the public in April 2009 and completing a "Return To Everest Expedition" in May 2009.  The launch included a sustained advertising campaign, a separate catalog of products featuring the FIRST ASCENT line, a FIRST ASCENT blog with over 90 video and written dispatches from the "Return To Everest Expedition," FIRST ASCENT shops installed within approximately 180 EDDIE BAUER stores across the country, and extensive in-store selling and marketing support.

9

Contemplating a FIRST ASCENT secondary label product line extension into the ski market, EBI filed an intent-to-use application for the FIRST DESCENT mark for camping equipment and clothing in June 2008.  Products using the FIRST DESCENT mark would carry the FIRST ASCENT label with the sub-brand modifier the "First Descent Series."  The intention of the "First Descent Series" modifier was to have that brand be third in order after the FIRST ASCENT and EDDIE BAUER brands. EBI assigned all of its rights in the FIRST DESCENT trademark application to defendant EB Licensing as part of the 2009 bankruptcy auction of assets.  EB Licensing subsequently licensed the mark to defendant Eddie Bauer LLC.

Defendants commenced use of the FIRST DESCENT mark in November 2009.  As intended, defendants have consistently delineated Eddie Bauer LLC's FIRST DESCENT skiing products as part of the "First Descent Series" of the FIRST ASCENT line of EDDIE BAUER outerwear.  The USPTO granted EB Licensing's trademark application to register FIRST DESCENT on May 31, 2011.  No third party opposed the registration of FIRST DESCENT.

Plaintiff now alleges that it owns common law trademark rights in the FIRST DESCENTS mark on clothing and that it has used the mark for such goods since 2001.[1]  On information and belief, however, plaintiff's sales of apparel using the FIRST DESCENTS mark, if any, were de minimis and sporadic, and its limited promotional distribution of such clothing was never directed to the general public.  Accordingly, plaintiff's use is insufficient to establish trademark rights in FIRST DESCENTS in clothing.

---

[1]  Although this action was purportedly filed by "First Descents, Inc.," there is no such entity registered with the Colorado Secretary of State.  It appears that plaintiff's actual name is "First Descents."

10

In any event, defendants' trademark rights in and use of the FIRST ASCENT mark date back to May 1988, based on the acquired common law rights in and registration of the mark for tote bags, back packs and sleeping bags.  EB Licensing's prior rights in the FIRST ASCENT mark for these related outdoor goods defeat plaintiff's claims challenging defendants' use of that mark for clothing.

Defendants also have priority over plaintiff in the FIRST DESCENT mark as a secondary label for its FIRST ASCENT clothing line due to EB Licensing's federal trademark registration for that mark and plaintiff's inability to establish common law rights in the FIRST DESCENTS mark for clothing prior to June 2, 2008 – the priority date of EB Licensing's registration.  Due to this priority, plaintiff's claims with respect to FIRST DESCENT likewise fail.

Even if plaintiff could establish prior trademark rights in its FIRST DESCENTS mark, defendants would not be liable for trademark infringement or unfair competition because there is no likelihood of confusion between the marks at issue.  Differences in the parties' respective products and marketing channels, the weaknesses of the marks, the use of the EDDIE BAUER mark in connection with defendants' goods, the sophistication of the consumers purchasing the parties' respective products, defendants' good faith intent in adopting and using their marks, and the absence of actual confusion all weigh heavily against any finding of likelihood of confusion.  The dissimilarity of the FIRST ASCENT and FIRST DESCENTS marks undermines any likelihood of confusion claim as to those two marks.

Plaintiff's claims are also barred by the affirmative defenses of laches, acquiescence and estoppel.  Even though plaintiff knew of EBI's and defendants' actions with respect to the FIRST ASCENT and FIRST DESCENT marks, it did not file a notice of opposition or petition

11

to cancel any of the six applications or registrations for those marks in the USPTO, and it unreasonably delayed in filing suit for trademark infringement and unfair competition until August 2011. Plaintiff's delay in asserting its purported legal rights caused defendants to rely to their detriment through the investment of significant resources to develop, launch and market products using the allegedly infringing marks. Plaintiff's lack of diligence in asserting its alleged trademark rights and the resulting prejudice to defendants preclude any relief on plaintiff's claims. In addition to its impermissible delay in asserting its rights, plaintiff engaged in conduct starting as early as October of 2008 that amounted to a consistent representation to defendants, both express and implied, that plaintiff had no objection to and would not oppose defendants' registration or use of either mark. Defendants relied on plaintiff's conduct by proceeding as outlined herein.

Finally, to the extent that plaintiff's claims are based on the conduct of EBI, they are barred by its discharge in bankruptcy in 2009.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

a.  First Descents is a Colorado non-profit corporation having its principal place of business at 6000 Greenwood Plaza Blvd., Suite 120, Greenwood Village, Colorado 80111.

b.  The United States Patent and Trademark Office ("USPTO") issued U.S. Service Mark Registration No. 2,695,260 on March 11, 2003 for the mark FIRST DESCENTS® for a motivational kayak camp for people with cancer. First Descents, Inc. is the owner of record of this registration.

c.      First Descents, Inc. is the applicant of record for U.S. Trademark Application Serial No. 77576914 for the mark FIRST DESCENTS for certain clothing items in Class 25 that is pending at the USPTO, claiming first use dates in 2001.  This application was filed on September 23, 2008.

d.      Eddie Bauer Licensing Services LLC is a Delaware limited liability company having a principal place of business at 10401 Northeast 8th Street, Suite 500, Bellevue, Washington 98004.

e.      Eddie Bauer LLC is a Delaware limited liability company having a principal place of business at 10401 Northeast 8th Street, Suite 500, Bellevue, Washington 98004.

f.      The USPTO issued U.S. Trademark Registration No. 1,538,160 on May 9, 1989 for the mark FIRST ASCENT® for tote bags, back packs and sleeping bags to Academy Broadway Corp., the original registrant of record for U.S. Trademark Reg. No. 1,538,160 for the mark FIRST ASCENT®.

g.      The first assignee of record of the entire interest in U.S. Trademark Reg. No. 1,538,160 for the mark FIRST ASCENT® is American Recreation Products, Inc.

h.      The second assignee of record of the entire interest in U.S. Trademark Reg. No. 1,538,160 for the mark FIRST ASCENT® is Eddie Bauer, Inc.

i.      The third assignee of record of the entire interest in U.S. Trademark Reg. No. 1,538,160 for the mark FIRST ASCENT® is Eddie Bauer Licensing Services LLC.

j.      Eddie Bauer Licensing Services LLC is the current owner of record of U.S. Trademark Reg. No. 1,538,160 for the mark FIRST ASCENT®.

13

k.       Eddie Bauer, Inc. filed an intent to use trademark application, Serial No. 77444768, for the mark FIRST ASCENT for clothing on April 10, 2008.

l.       Eddie Bauer, Inc. filed an intent to use trademark application, Serial No. 77488968, for the mark FIRST DESCENT for clothing on June 2, 2008.

m.       The USPTO issued U.S. Trademark Reg. No. 3,934,798 on March 22, 2011 for the mark FIRST ASCENT® for clothing.  Eddie Bauer Licensing Services LLC is the owner of record of this registration.

n.       The USPTO issued U.S. Trademark Reg. No. 3,970,936 on May 31, 2011 for the mark FIRST DESCENT® for clothing.  Eddie Bauer Licensing Services LLC is the owner of record of this registration.

o.       The USPTO issued U.S. Trademark Reg. No. 3,974,941 on June 7, 2011 for the stylized design of FIRST ASCENT (with an "A" on top of the word FIRST ASCENT) for water bottles and clothing.  Eddie Bauer Licensing Services LLC is the owner of record of this registration.

## 5. COMPUTATION OF DAMAGES

First Descents seeks an award of damages as allowed by law, including but not limited to each Defendant's profits or gains of any kind resulting from its willful infringement, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117 and exemplary damages in view of the intentional, willful, wanton and reckless disregard of its rights by Defendants.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND
### MEETING UNDER FED.R.CIV.P. 26(f)

a.      Date of Rule 26(f) meeting:  **October 3 and 7, 2011.**

b.      Names of each participant and party he/she represented.

For the Plaintiff:  **Gayle L. Strong of Greenberg Traurig LLP.**

For the Defendants:  **Kevin A. Russell and Matthew W. Walch of Latham &**

**Watkins LLP.**

c.   Statement as to when Rule 26(a)(1) disclosures were made or will be made.  **The**

**parties shall make their Rule 26(a)(1) disclosures on or before October 17, 2011.**

d.   Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ.

P. 26(a)(1).  **None.**

e.   Statement concerning any agreements to conduct informal discovery:  **None.**

f.   Statement concerning any other agreements or procedures to reduce discovery and

other litigation costs, including the use of a unified exhibit numbering system.  **The**

**parties agree to use their best efforts to reduce unnecessary discovery and other**

**litigation costs.  The parties agree, to the extent practicable, to use a unified exhibit**

**numbering system for depositions and at trial.**

g.   Statement as to whether the parties anticipate that their claims or defenses will

involve extensive electronically stored information, or that a substantial amount of

disclosure or discovery will involve information or records maintained in electronic

form.  **The parties believe that some portion of the information relevant to their**

**claims and defenses will be electronically stored information. Both parties have**

15

**instituted litigation hold procedures since commencement of the litigation. The parties agree to use their best efforts to manage electronic discovery in an efficient manner, and are discussing an agreement as to an appropriate ESI protocol.**

h.   Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

**Plaintiff's Statement:  The parties have discussed the possibility of settlement. Plaintiff served on October 7, 2011 discovery relating to Defendants' use of the FIRST ASCENT and FIRST DESCENT marks on apparel subsequent to First Descents' use of its FIRST DESCENT® mark, and will provide a written settlement proposal upon receipt of Defendants' discovery responses.**

**Defendants' Statement:  On August 15, 2011, defendants' counsel sent a letter to plaintiff's counsel expressing interest in a mutually satisfactory resolution of this suit and requesting a written settlement demand from plaintiff.  Defendants reiterated this request during the parties' Rule 26(f) Conference on October 3, 2011.  To date, defendants have not received any such demand.**

## 7. CONSENT

All parties have **not** consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.  **The Parties do not propose any modification to the presumptive number of ten depositions contained in the Federal**

Rules, excluding experts.  **The Parties agree to 25 interrogatories, including discrete subparts, without leave of court.**

b.  Limitations which any party proposes on the length of depositions.  **Any deposition may last 7 hours (excluding breaks).**

c.  Limitations which any party proposes on the number of requests for production and/or requests for admission.

**Each party shall be permitted to serve up to sixty-five (65) requests for production to each party, pursuant to Rule 34, and fifty (50) requests for admission to each party, pursuant to Rule 36, excluding requests for authentication of documents.**

d.  Other Planning or Discovery Orders.  **The parties will submit a proposed protective order no later than October 28, 2011.**

### 9. CASE PLAN AND SCHEDULE

a.  Deadline for Joinder of Parties and Amendment of Pleadings:  **December 8, 2011**.

b.  Discovery Cut-off: **May 20, 2012.**

c.  Dispositive Motion Deadline: **May 27, 2012.**

d.  Expert Witness Disclosure:

1.  The parties shall identify anticipated fields of expert testimony, if any.

**First Descents anticipates one or more experts in the fields of USPTO policies, procedures and examination practice, likelihood of confusion, and damages.**

**Defendants anticipate identifying one or more experts in the fields of secondary meaning and consumer perceptions, likelihood of confusion, the nature of and relationship between the outdoor apparel and gear market and damages.**

2.  Limitations which the parties propose on the use or number of expert witnesses.  **The parties agree that each side shall call no more than four (4) experts at trial.**

3.  The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before :  **March 15, 2012.**

4.  The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before : **April 30, 2012.**

h.  Identification of Persons to Be Deposed:

Plaintiff's Identification:

| Name of Deponent | Deposition Date | Deposition Time | Anticipated Deposition Length |
|---|---|---|---|
| Defendants' Rule 30(b)(6) witnesses | To be determined | To be determined | 7 hours/designated witness |
| Defendants' witnesses identified in Rule 26(a)(1) Disclosures | To be determined | To be determined | 7 hours/ witness |
| Defendants' witnesses identified in discovery responses | To be determined | To be determined | 7 hours/ witness |

Defendants' Identification:   Defendants currently intend to depose the following individuals for 7 hours each:

1. Bradford R. Ludden (Founder/Chief Mission Officer, First Descents)

2. Joel Appel (Executive Director, First Descents)

3. Joel Heath (Former Chairman of the Board, First Descents)

4. Peter K. Worley (Board Member, First Descents)

5. Kelly Malin (COO/Director of Marketing, First Descents)

6. Angela Rossi (Event Planner & Fundraiser, First Descents)

7. Leigh Augustine (outside counsel, First Descents)

Defendants further reserve the right to depose: (a) a 30(b)(6) representative of plaintiff on certain specified topics; (b) any individuals identified in plaintiff's Rule 26(a)(1) initial disclosures; and (c) any experts identified by plaintiff pursuant to this Scheduling Order.  Finally, defendants may depose certain third parties, including allegedly confused consumers as well as marketing and sponsorship partners and potential partners of plaintiff based on the information and documents provided during discovery.

    i.    Deadline for Interrogatories:  **All written discovery must be served so that responses are due on or before the discovery cut-off date.**

    j.    Deadline for Requests for Production of Documents and/or Admissions:  **All written discovery must be served so that responses are due on or before the discovery cut-off date.**

19

## 10. DATES FOR FURTHER CONFERENCES

a.       A settlement conference will be held in December 2011 on a date to be selected by the parties.  It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

( )       Pro se parties and attorneys only need be present.

(X)       Pro se parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel. If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

(X)       Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before one week prior to the conference, outlining the facts and issues, as well as the strengths and weaknesses of their case.

b.       Status conferences will be held in this case at the following dates and times:

_____.

c.       A final pretrial conference will be held in this case on July 2, 2012 at 9:30 o'clock a.m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than five (5) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.       Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

b.       Anticipated length of trial and whether trial is to the court or jury.  **Five (5) day trial to a jury.**

c.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facility at 212 N. Wahsatch Street, Colorado Springs, Colorado.  **None.**

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 24th day of October, 2011.

21

BY THE COURT:

 S/Michael E. Hegarty
United States Magistrate Judge

**APPROVED:**

s/  Gayle L. Strong
Gayle L. Strong
Amy L. Kramer
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Tel:  303-572-6500
Fax:  303-572-6540
strongg@gtlaw.com
kramera@gtlaw.com

ATTORNEYS FOR PLAINTIFF

s/  Kevin A. Russell
Sean M. Berkowitz
Kevin A. Russell
Matthew W. Walch
Sue K. Paik
LATHAM & WATKINS LLP
233 S. Wacker Drive, Suite 5800
Chicago, IL  60606
Tel:  312-876-7700
Fax:  312-993-9767
sean.berkowitz@lw.com
kevin.russell@lw.com
matthew.walch@lw.com
sue.paik@lw.com

Cliff Stricklin
Andrew B. Mohraz
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
Tel: 303-861-7000
Fax:  303-866-0200
cliff.stricklin@hro.com
andrew.mohraz@hro.com

ATTORNEYS FOR DEFENDANT